THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Jeffery R. Hart, Respondent,
 v.
 South Carolina
 Department of Transportation, Appellant.
 
 
 

Appeal From Orangeburg County
Diane S. Goodstein, Circuit Court Judge
Unpublished Opinion No. 2008-UP-432
Heard May 7, 2008  Filed August 4, 2008
AFFIRMED

 
 
 
 Andrew F. Lindemann, of Columbia, for Appellant.
 David Whittington, of Summerville, for Respondent.
 
 
 

PER
 CURIAM:  In this personal injury
 action, the South Carolina Department of Transportation appeals a verdict for Plaintiff
 Jeffery R. Hart.  The questions presented in this appeal are:  (1) whether the
 Department was entitled to claim sovereign immunity under the South Carolina
 Tort Claims Act; and (2) whether the trial judge erred in directing a verdict
 on the Departments defense of comparative negligence.  We affirm.
FACTS AND PROCEDURAL
 HISTORY
Hart was employed as
 a senior patrol officer by the Town of Holly Hill.  On December 1, 2002, Hart
 began his patrol shift around 9:00 p.m., expecting to work until seven oclock
 the following morning.  During the early morning hours of his shift, Hart
 observed a vehicle stop at two residences one block apart from each other.  At
 both stops, the driver of the car hastily exited the vehicle and quickly
 approached the house.  When he observed the vehicle make a left turn without a
 turn signal, Hart instructed another officer on duty in the vicinity to
 initiate a traffic stop.  In addition, because of the behavior of the driver,
 Hart wanted to make sure everything was still going to be okay with the person.
The officer whom Hart had instructed to initiate the
 traffic stop informed Hart by radio that the vehicle did not pull over after
 activation of the blue light.  When Hart heard the siren in the background, he
 activated the blue light and siren on his own vehicle and joined in the
 pursuit.
During the pursuit,
 Hart observed the vehicles of both the suspect and the accompanying officer
 stop at two stop signs.  Furthermore, neither vehicle ran any stop signs.  After
 the suspect feigned a stop, the vehicle Hart was driving became the primary car
 behind the suspects vehicle.
Because
 Hart had never been on the road on which the suspect was leading him, he asked
 the Orangeburg County dispatch if there was a deputy in the area.  At no time
 did either Harts vehicle or the suspects vehicle ever exceed eighty miles per
 hour.[1] 
 Throughout the pursuit, Hart maintained a following distance of about six to
 eight car lengths.
The paved, straight road on which the two vehicles
 were proceeding dead-ended into a dirt road; however, there was no stop sign at
 the intersection.  The suspect did not stop at the intersection, which caused
 her vehicle to go airborne into the woods, resulting in fatal injuries. 
 Similarly, Hart was unable to stop or take other evasive action and sustained
 bodily injuries when his vehicle crashed into the same wooded area.  Hart
 estimated both vehicles were traveling at a speed of seventy-two miles per hour
 when they reached the intersection.
On November 10,
 2004, Hart commenced this action under the South Carolina Tort Claims Act
 against the Department, alleging the Department was negligent in failing to
 have appropriate signage at the intersection.  In its answer, dated January 19,
 2005, the Department denied the allegations in the complaint and made the
 following assertions as affirmative defenses:  (1) the acts or omissions of
 third parties not within its control superseded and intervened to such an
 extent as to negate any effect of its own negligence; (2) punitive damages were
 not recoverable; (3) the acts or omissions allegedly constituting negligence
 were not actionable because they resulted from the exercise of discretion or
 judgment; (4) Harts own negligence barred any recovery; and (5) the Department
 was entitled to any defense under the South Carolina Tort Claims Act, S.C.
 Code Ann. § 15-78-10 et seq. not already pled above.
A jury trial in the
 matter took place on January 9, 2006.  At the close of Harts case and again at
 the close of its own case, the Department moved for a directed verdict on the
 following three grounds:  (1) Hart failed to prove the Department had actual or
 constructive notice of the missing stop sign; (2) Harts negligence was greater
 than 50 percent and he should not recover under comparative negligence law; and
 (3) Harts sole remedy was through the South Carolina Workers Compensation
 Act.  The trial judge rejected all three grounds and denied the motion.
Hart also moved for directed verdicts on the issue of
 liability and on the Departments comparative negligence defense.  Although the
 trial judge submitted the issue of liability to the jury, she directed a
 verdict for Hart on the issue of comparative negligence, thus striking that
 defense.
The
 jury returned a verdict in Harts favor in the amount of $1,000,000.  The
 Department then filed post-trial motions for judgment notwithstanding the
 verdict (JNOV), for a new trial absolute, and to alter or amend the judgment.  By
 order dated April 6, 2006, the trial judge granted the Departments motion to
 alter or amend the judgment, reducing the verdict to $300,000 in accordance
 with the South Carolina Tort Claims Act, but denied the Departments other
 motions.  Specifically, the trial judge found the Department had constructive
 notice because [it] was under a continuing duty to check the intersection
 bi-monthly or six (6) times a year, plus a night inspection annually.  The
 trial judge also found there was no evidence that Hart was negligent under the
 circumstances of the case.  Finally, the trial judge rejected the Departments
 claim that the South Carolina Workers Compensation Act was Harts only remedy.
  This appeal followed.
STANDARD OF REVIEW
The trial court is required to view the evidence and reasonably
 drawn inferences in the light most favorable to the non-moving party when
 ruling on motions for directed verdict and JNOV.  Jinks v. Richland County, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003).  The court should deny the
 motion when the evidence yields more than one inference or its inference is in
 doubt.  Id.  The appellate court
 will reverse the trial courts ruling on a JNOV motion only when there is no
 evidence to support the ruling or where the ruling is
 controlled by an error of law.  Law v. S.C. Dept of Corr., 368 S.C.
 424, 434-435, 629 S.E.2d 642, 648 (2006) (citing Hinkle v. Natl Cas. Ins. Co., 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003)).
LAW/ANALYSIS
1.  The
 Department asserts the trial judge should have ruled it was entitled to protection
 from liability under section 15-78-60(14) of the South Carolina Tort Claims
 Act.  We find no reversible error.
In her
 post-trial order, the trial judge gave three reasons for rejecting the
 Departments argument that Harts sole remedy for his injuries was through the
 South Carolina Workers Compensation Act:  (1) the issue had not been properly
 raised to the court; (2) South Carolina Code section 15-78-60(14) did not bar
 Hart from pursuing a personal injury claim against the Department because he
 was employed by the Town of Holly Hill, not by the State or the South Carolina
 Department of Transportation; and (3) even if section 15-78-60(14) were
 applicable, Hart could still recover against the Department under the dual
 persona doctrine because he was suing the Department for breach of duties that
 were wholly independent of any owed to him as an employee of the Town of Holly
 Hill.  A decision by this Court to uphold any one of these three grounds is
 sufficient to affirm the trial judges determination that Hart was not limited
 to recovery under the South Carolina Workers Compensation Act for his injuries.  See Weeks v. McMillan, 291 S.C. 287, 292, 353 S.E.2d 289, 292
 (Ct. App. 1987) (Where a decision is based on alternative grounds, either of
 which independent of the other is sufficient to support it, the decision will
 not be reversed even if one of the grounds is erroneous.).
We
 agree with the trial judge that the issue of whether the Department was immune
 from liability under section 15-78-60(14) was not properly presented to the
 trial court.
Under
 the South Carolina Tort Claims Act, [t]he State, an agency, a
 political subdivision, and a governmental entity are liable for their torts in
 the same manner and to the same extent as a private individual under like
 circumstances subject to limitations and exemptions from liability and damages
 as provided within the Act.  S.C. Code Ann. § 15-78-40 (2005).  One such
 exception to the waiver of immunity is contained within section 15-78-60(14). 
 That section provides in pertinent part that [t]he governmental entity is not
 liable for a loss resulting from . . . any claim covered by the South Carolina
 Workers Compensation Act, except claims by or on behalf of an injured employee
 to recover damages from any person other than the employer . . . .  Id. § 15-78-60(14).  As with other limitations on liability under the Act, however,
 the burden of establishing this exception is on the governmental entity
 asserting it as an affirmative defense.  Clark v. S.C. Dept of Pub.
 Safety, 362 S.C. 377, 386, 608 S.E.2d 573, 578 (2005).  Moreover, as an
 affirmative defense, this exception must be specifically pled to be considered. 
 61A Am. Jur. 2d Pleading § 295 (1999).  See also 71 C.J.S. Pleading § 198 (2000) (A plea or answer setting up new matter as a defense generally
 must contain a statement of facts and should be certain and precise.).
Even if we were to
 accept the Departments argument in its reply brief that the question of
 whether Harts accident was covered under the South Carolina Workers
 Compensation Act was a matter of law, we share the trial judges concern
 regarding how the Department attempted to raise this issue.  In its answer, the
 Department made only a nonspecific reference to any defense under the South Carolina Tort Claims Act
 . . . not already pled above.  At no time during this litigation did the Department expressly assert section 15-78-60(14) as an
 affirmative defense or as a ground for summary judgment.  Moreover,
 although Rule 15(b) of the South Carolina Rules of Civil Procedure allows
 pleadings to be amended as necessary to conform to the evidence, here there was
 nothing in the record before us on which to base an amendment of the
 Departments answer to include the specific affirmative defense that it was
 entitled to immunity because Harts claim should have been covered by workers
 compensation.[2]
Under
 these circumstances, we do not fault the trial judge for her reservations about
 deciding this issue.  Absent from the record is any indication before its
 directed verdict motion that the Department ever intended to rely on section
 15-78-60(14) as an affirmative defense.  Cf. Turner v. Cent. Local
 Sch. Dist., 706 N.E.2d 1261, 1264 (Ohio 1999) (reversing the grant of the
 defendant school districts motion to include a statutory immunity defense in
 part because the district failed to assert the defense in a timely manner and
 its failure to do so made it reasonable for the plaintiffs to assume the
 defense would be waived).
2.  The Department also
 contends the trial judge erred in directing a verdict on its defense that Hart
 was negligent, thus preventing the jury from apportioning fault on the basis of
 Harts alleged comparative negligence.  We disagree.
Under South
 Carolina Code section 56-5-760, the driver of an authorized emergency vehicle
 may exceed the maximum speed limit if he does not endanger life or property
 when appropriate audible and visual signals on the vehicle are activated.  S.C.
 Code Ann. § 56-5-760(B)(3) (2006).  This section further provides that its
 protections do not relieve the driver of an authorized emergency vehicle from
 the duty to drive with due regard for the safety of all persons.  Id. § 56-5-760(D).  
On appeal, the
 Department contends Hart failed to exercise due care for his own safety by (1)
 pursuing a traffic offender at an excessive rate of speed in the dark and in an
 area with which he was unfamiliar; (2) following the lead vehicle too closely
 and failing to maintain a proper lookout; and (3) failing to terminate the
 search according to the Holly Hill Police Policy and Procedure for police
 pursuits.  We agree with the trial judge that none of these grounds gave rise
 to an inference Hart was negligent.
We acknowledge that
 the pursuit took place at night and that Hart admitted he had exceeded the
 posted speed limit and did not know the area.  Nevertheless, it was also
 undisputed that the weather conditions were good and the road on which both
 vehicles were traveling was straight and paved.  Moreover, there was no evidence
 that the same accident would not have occurred even if Hart was traveling the
 speed limit.  See Horton v. Greyhound, 241 S.C. 430, 439, 128
 S.E.2d 776, 781 (1962) (The concurrence of excessive
 speed with this primary, efficient cause of the collision does not impose
 liability on the defendants unless, without it, the collision would not have
 occurred.).
As to
 the Departments allegations that Hart followed the suspect vehicle too
 closely, the only pertinent evidence is Harts testimony that he maintained a
 following distance of approximately six to eight car lengths consistent with
 his training.  Furthermore, the only evidence regarding whether Hart kept a
 proper lookout was his testimony on cross-examination that, contrary to what
 the Department was trying to establish, his attention was not focused exclusively
 on the suspect vehicle.  There is no evidence that either Hart or the suspect
 had driven erratically.  As noted earlier in this opinion, both vehicles had
 stopped at stop signs twice during the pursuit.
Finally, we
 reject the Departments assertion that Hart should have ended the pursuit.  Regardless
 of whether written procedures warranted termination of the pursuit, the trial
 judge found [t]here was no evidence otherwise presented that [Hart] should
 have abandoned his pursuit due to the endangerment of life or property.  Although,
 as the Department noted in its brief, Hart admitted he would have terminated
 the pursuit for safety reasons if it had continued on the dirt road
 intersecting the road on which both vehicles were traveling just before the
 accident, the pursuit ended while both vehicles were still on the paved road
 and crashed into the woods.  We have found no evidence in the recordand the
 Department has not directed our attention to anyof hazards appearing before
 the accident that should have prompted Hart to discontinue the pursuit.
AFFIRMED.
WILLIAMS,
 THOMAS, and PIEPER, JJ., concur.

[1]  The posted speed limit on the road was fifty-five
 miles per hour.
[2]  The trial judge observed the record was completely
 void as to any evidence of [Harts] entitlement to benefits under the South
 Carolina Workers Compensation Act, and, when arguing his directed verdict
 motion, counsel for the Department conceded theres no evidence in the record
 in the workers compensation claim.